## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

In re:

**CEDRIC TYRELL PAGE, SR.**
**AKA CEDRIC T. PAGE, SR.**
**ANGELA MOORE PAGE**                                    **CHAPTER 13**
**AKA ANGELA M. PAGE**
**AKA ANGELA PAGE,**

        **DEBTORS.**                                    **CASE NO. 15-31584-KRH**

**SPECIALIZED LOAN SERVICING LLC AS**
**SERVICING AGENT FOR DEUTSCHE BANK**
**NATIONAL TRUST COMPANY, AS TRUSTEE**
**FOR HOME EQUITY MORTGAGE LOAN ASSET-**
**BACKED TRUST, SERIES INABS 2005-A, HOME**
**EQUITY MORTGAGE LOAN ASSET-BACKED**
**CERTIFICATES, SERIES INABS 2005-A,**

        **MOVANT,**

**vs.**

**CEDRIC TYRELL PAGE, SR.**
**ANGELA MOORE PAGE**
**and CARL M. BATES, TRUSTEE,**

        **RESPONDENTS.**

### MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### (REAL PROPERTY LOCATED AT 5000 FARADAY DRIVE, CHESTER, VA 23831)

NOTICE

YOUR RIGHTS MAY BE AFFECTED.  YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE.  (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)

TO:     CEDRIC TYRELL PAGE, SR., AND ANGELA MOORE PAGE, DEBTORS
         CARL M. BATES, TRUSTEE
IF YOU DO NOT WISH THE COURT TO GRANT THE RELIEF SOUGHT IN THE MOTION, OR IF YOU WANT THE COURT TO CONSIDER YOUR VIEWS ON THE MOTION, THEN WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE OF THIS MOTION, YOU MUST FILE A WRITTEN RESPONSE EXPLAINING YOUR POSITION WITH THE COURT AND SERVE A COPY ON THE MOVANT.  UNLESS A WRITTEN RESPONSE IS FILED AND SERVED WITHIN THIS FOURTEEN (14) DAY PERIOD, THE COURT MAY DEEM OPPOSITION WAIVED, TREAT THE MOTION AS CONCEDED, AND ISSUE AN ORDER GRANTING THE REQUESTED RELIEF WITHOUT FURTHER NOTICE OR HEARING.

IF YOU MAIL YOUR RESPONSE TO THE COURT FOR FILING, YOU MUST MAIL IT EARLY ENOUGH SO THE COURT WILL RECEIVE IT ON OR BEFORE THE EXPIRATION OF THE FOURTEEN (14) DAY PERIOD.

**THE PRELIMINARY HEARING IS SCHEDULED TO BE HELD ON MAY 4, 2016 AT 11:00 AM IN THE U.S. BANKRUPTCY COURT, 701 EAST BROAD STREET, RICHMOND, VA 23219, COURTROOM 5000.**

Douglas S. Rubin, Esquire
Counsel for Movant
Samuel I White, P.C.
Bar No. 84393
1804 Staples Mill Road,
Suite 200
Richmond, VA 23230
(804) 290-4290
File No. 39518

Specialized Loan Servicing LLC as servicing agent for Deutsche Bank National Trust Company, as Trustee for Home Equity Mortgage Loan Asset-Backed Trust, Series INABS 2005-A, Home Equity Mortgage Loan Asset-Backed Certificates, Series INABS 2005-A ("Movant") hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief from the automatic stay with respect to certain real property of the Debtors having an address of 5000 Faraday Drive, Chester, VA 23831 (the "Property"), for all purposes allowed by the Note (defined below), the Deed of Trust (defined below), and applicable law, including but not limited to the right to foreclose.  In further support of this Motion, Movant respectfully states:

1.      This Court has Jurisdiction over this proceeding pursuant to 28 U.S.C. Sections 157 and 1334 and 11 U.S.C. 362(d), and that this matter is a core proceeding.

2.      A petition under Chapter 7 of the United States Bankruptcy Code was filed with respect to the Debtors on March 25, 2015.  An order converting the case to a case under Chapter 13 was entered on August 6, 2015.

3.      A Chapter 13 Plan was confirmed on November 3, 2015.

4.      The Debtors have executed and delivered or are otherwise obligated with respect to that certain promissory note in the original principal amount of $256,000.00 (the "Note").  A copy of the Note is attached hereto as Exhibit A.

5.      Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtors under and with respect to the Note and the Deed of Trust are secured by the Property and the other collateral described in the Deed of Trust.  The lien created by the Deed of Trust was perfected by recording of the Deed of Trust in the office of the Clerk of the County of Chesterfield, Virginia.  A copy of the recorded Deed of Trust is attached hereto as Exhibit B.

6.      The legal description of the Property is:

**ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND, WITH IMPROVEMENTS THEREON AND APPURTENANCES THERETO BELONGING, LYING AND BEING IN CHESTERFIELD COUNTY, VIRGINIA BEING KNOWN AND DESIGNATED AS LOT 36, SECTION FOUR, ON SUBDIVISION PLAT MADE BY TIMMONS, ENGINEERS, SURVEYORS, LANDSCAPE ARCHITECT, ECT., SAID PLAT OF STONEY GLEN SOUTH, DATED OCTOBER 24, 2003, RECORDED IN THE CLERK'S OFFICE, CIRCUIT COURT OF CHESTERFIELD COUNTY, VIRGINIA, ON NOVEMBER 12, 2003 IN PLAT BOOK 139, PAGE 2 AND 3, REFERENCE TO WHICH PLAT IS HEREBY MADE FOR A MORE PARTICULAR DESCRIPTION OF THE SAID PROPERTY HEREIN CONVEYED HEREIN.**

**BEING A PART OF THE SAME PROPERTY CONVEYED TO THE REEDS LANDING CORPORATION, BY DEED FROM THE THOMAS COMPANY, LLC, A VIRGINIA LIMITED LIABILITY COMPANY, DATED AUGUST 11, 2000, RECORDED AUGUST 11, 2000, IN THE CLERK'S OFFICE,**

**CIRCUIT COURT, CHESTERFIELD COUNTY, VIRGINIA, IN DEED BOOK 3884 PAGE 336.**

7.      Specialized Loan Servicing LLC services the loan on the Property referenced in this Motion.  In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtors obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant or Movant's successor or assignee. Movant, directly or through an agent, has possession of the Note.  The Note is either made payable to Movant or has been duly endorsed.  Movant is the original mortgagee or beneficiary or the assignee of the Mortgage/Deed of Trust. As of March 10, 2016, the unpaid principal balance due is $271,236.28 and the approximate outstanding amount of Obligations less any partial payments or suspense balance is $300,907.40.

8.      The following chart sets forth the number and amount of post-petition payments due pursuant to the terms of the Note that have been missed by the Debtors as of March 10, 2016:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 6 | 10/01/2015 | 03/01/2016 | $1,748.80 | $10,492.80 |
| Less post-petition partial payments (suspense balance): | | | | ($0.00) |
| | | | Total: | $10,492.80 |

9.      As of March 10, 2016, the total post-petition arrearage/delinquency is $10,492.80, consisting of (i) the foregoing total of missed post-petition payments in the amount of $10,492.80, plus (ii) the following fees:

| Fee Description | Amount |
|---|---|
| N/a | N/a |

10.      Attached as Exhibit C is a record of the pre-petition arrears due at filing and the amount that remains to be paid by the Trustee.

11.      Cause exists for relief from the automatic stay for the following reasons:

    i.       Movant's interest in the Property is not adequately protected.

    ii.      Post-Petition payments required by the confirmed plan have not been made to Movant.

    iii.     Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtors have no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.      Relief from the stay for all purposes allowed by applicable law, the Note, and the Deed of Trust, including but not limited to allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Deed of Trust.

2.      That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3.      For such other relief as the Court deems proper.

Movant further requests that upon entry of an order granting relief from stay, it be exempted from further compliance with Fed. Rule Bankr. P. 3002.1 in the instant bankruptcy case.


Dated: April 4, 2016.

SPECIALIZED LOAN SERVICING LLC AS SERVICING AGENT FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR HOME EQUITY MORTGAGE LOAN ASSET-BACKED TRUST, SERIES INABS 2005-A, HOME EQUITY MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES INABS 2005-A

By: **/s/ Douglas S. Rubin**
Eric D. White, Esquire, Bar No. 21346
Michael T. Freeman, Esquire, Bar No. 65460
Brandon R. Jordan, Esquire, Bar No. 72170
Kimberly L. Britt, Esquire, Bar No. 78720
Johnie R. Muncy, Esquire, Bar No. 73248
Douglas S. Rubin, Esquire, Bar No. 84393
Samuel I. White, P. C.
1804 Staples Mill Road,
Suite 200
Richmond, VA 23230
Tel.: (804) 290-4290
Fax: (804) 290-4298
drubin@siwpc.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Motion was served by first class mail postage prepaid or email this 4th day of April, 2016 on all necessary parties including Carl M. Bates, Trustee, P.O. Box 1819, Richmond, VA 23218; Richard O. Gates, Counsel for Debtors, P.O. Box 187, Chesterfield, VA 23832; and Cedric Tyrell Page, Sr., and Angela Moore Page, Debtors, 5000 Faraday Drive, Chester, VA 23831.

**/s/ Douglas S. Rubin**
Douglas S. Rubin, Esquire
Samuel I. White, P. C.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 15-31584-KRH |
| CEDRIC TYRELL PAGE, SR. | § | |
| AKA CEDRIC T. PAGE, SR. | § | CHAPTER 13 |
| ANGELA MOORE PAGE | § | |
| AKA ANGELA M. PAGE | § | |
| AKA ANGELA PAGE | § | |
| DEBTOR(S) | § | |
| | § | |
| SPECIALIZED LOAN SERVICING LLC, AS | § | |
| SERVICING AGENT FOR DEUTSCHE BANK | § | |
| NATIONAL TRUST COMPANY, AS TRUSTEE | § | |
| FOR HOME EQUITY MORTGAGE LOAN | § | |
| ASSET-BACKED TRUST, SERIES INABS 2005- | § | |
| A, HOME EQUITY MORTGAGE LOAN | § | |
| ASSET-BACKED CERTIFICATES, SERIES | § | |
| INABS 2005-A | § | |
| MOVANT | § | |
| VS | § | |
| CEDRIC TYRELL PAGE, SR. | § | |
| ANGELA MOORE PAGE | § | |
| AND CARL M. BATES, TRUSTEE | § | |
| RESPONDENTS | | |

## AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM STAY

"I, __Ami McKernan__ ___Second Assistant Vice President___ hereby state the following:

1. Specialized Loan Servicing LLC, as servicing agent for Deutsche Bank National Trust Company, as Trustee for Home Equity Mortgage Loan Asset-Backed Trust, Series INABS 2005-A, Home Equity Mortgage Loan Asset-Backed Certificates, Series INABS 2005-A ("Movant") and its successors and/or assigns, is authorized to sue on its own behalf.

2. I am an employee of Specialized Loan Servicing LLC and duly authorized representative of Movant and hereby make this affidavit in such capacity. All facts recited herein are within my personal knowledge of all records concerning the account with Debtor(s) and are true and correct.

3. In the course of my employment, I have become familiar with the manner and method in which Specialized Loan Servicing LLC maintains its books and records in its regular course of business. Those books and records are managed by employees and agents whose duty it is to keep the books and records accurately and completely and to record each event or item at or near the time of the event or item so noted.

4. I am familiar with the books and records related to the Note secured by Mortgage/Deed of Trust of even date therewith covering certain real property located at 5000 Faraday Drive, Chester, VA 23831, and more particularly described in the Mortgage/Deed of Trust.

5. Note and/or Mortgage/Deed of Trust, Loan Number xxxxxx0673, in the original principal amount of $256,000.00, dated August 2, 2004 was executed by the Original Mortgagor(s): Cedric T. Page and Angela M. Page to MortgageIT, Inc.

6. Debtor(s) are in default on their obligations to Movant in that Debtor(s) have failed to make their installment payments when due and owing pursuant to the terms of the above-described Note and/or Mortgage/Deed of Trust.

7. As of the date of filing of this case, the pre-petition arrears were $26,234.02. As of March 10, 2016, there remains $26,019.25 to be paid per the Trustee Ledger.

8. As of March 10, 2016, the unpaid principal balance was $271,236.28. Debtor(s) are due 6 post-petition payments, totaling: $10,492.80.

| Number of Missed Payments | From | To | Missed Principal & Interest | Missed Escrow (If Applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 6 | 10/01/2015 | 03/01/2016 | $1,308.75 | $440.05 | $1,748.80 | $10,492.80 |

9. As of March 10, 2016, there are unpaid post-petition fees and costs incurred less than 180 days ago in the amount of $0.00 due and owing that have not been Noticed under Rule 3002.1(c).

| Date Assessed | Description of Fee | Amount |
|---|---|---|
| NA | NA | NA |

{THIS SPACE WAS INTENTIONALLY LEFT BLANK}

10. As of March 10, 2016, the total post-petition delinquency is $10,492.80, which includes a credit of the suspense balance of $0.00.

11. By failing to make the regular monthly installment payments due pursuant to the Note and/or Mortgage/Deed of Trust, Debtor(s) have not provided adequate protection to Movant.

12. Movant has had to retain counsel to represent it before this Court and is incurring legal expenses and attorneys' fees for which it is entitled to reimbursement under the terms of the Note.

I declare that the foregoing facts are true and correct to the best of my knowledge.

FURTHER AFFIANT SAYETH NOT."

**Specialized Loan Servicing LLC, as servicing agent for Deutsche Bank National Trust Company, as Trustee for Home Equity Mortgage Loan Asset-Backed Trust, Series INABS 2005-A, Home Equity Mortgage Loan Asset-Backed Certificates, Series INABS 2005-A**

15-31584-KRH                           By: _____    MAR 2 9 2016

**Ami McKernan**    Second Assistant Vice President
A duly Authorized Representative

State of Colorado
County of Douglas

The foregoing instrument was acknowledged before me this _____ by
                                                              (Date)
_____ of Specialized Loan Servicing LLC, a Delaware
                    (Name, Title)
Limited Liability Company, on behalf of the LLC.

_____
(Notary's official Signature)

_____
(Commission Expiration)            See attached.

## COLORADO NOTARIAL JURAT

STATE OF COLORADO        )

COUNTY OF DOUGLAS        )

Subscribed and sworn before me in the County of Douglas, State of Colorado this
MAR 2 9 2016

_____ by ____**Ami McKernan**____ ~~Second Assistant Vice President~~ _____

(Date)                                                  (Name)

---

**JORDAN SCOTT LASSLEY**
**NOTARY PUBLIC**
**STATE OF COLORADO**
**NOTARY ID 20114045016**
**MY COMMISSION EXPIRES 07/19/2019**

_Notary's Official Signature_

_Commission Expiration_

| Description of document this notarial certificate is being attached to: | | |
|---|---|---|
| Type / Title of Document: | Affidavit | |
| Date of Document: | MAR 2 9 2016 | |
| Number of Pages: | 7. | |
| Additional Signers (other than those named in notarial certificate) | N/A | |

Note: This is a jurat format notarial certificate. This document as well as the document it is attached to cannot
contain any blank lines. Please ensure all blanks are filled in prior to notarization.

| Creditor: | Specialized Loan Servicing LLC |
|---|---|
| Debtor: | Cedric Tyrell Page Sr |
| Case No.: | 15-31584-KRH |
| Loan No.: | ███████ |
| Our File No.: | ███████ |
| Collateral: | 5000 Faraday Drive, Chester, VA 23831 |

**PAYMENTS RECEIVED**

| | |
|---|---|
| Loan Status as of: | 3/10/2016 |
| Initial Due Date: | 9/1/2015 |

| Date Received | Amount Received | Due Date | Amount Due | NSF/Late Charges/Other | Paid Over/Short | Description |
|---|---|---|---|---|---|---|
| | $ - | 9/1/2015 | $ 1,748.80 | $ - | $ (1,748.80) | Payment Accrued |
| | $ - | 10/1/2015 | $ 1,748.80 | $ - | $ (1,748.80) | Payment Accrued |
| 10/23/2015 | $ 938.00 | | | $ - | $ 938.00 | Funds Received |
| 10/30/2015 | $ 810.80 | | | $ - | $ 810.80 | Funds Received |
| | $ - | 11/1/2015 | $ 1,748.80 | $ - | $ (1,748.80) | Payment Accrued |
| | $ - | 12/1/2015 | $ 1,748.80 | $ - | $ (1,748.80) | Payment Accrued |
| | $ - | 1/1/2016 | $ 1,748.80 | $ - | $ (1,748.80) | Payment Accrued |
| | $ - | 2/1/2016 | $ 1,748.80 | $ - | $ (1,748.80) | Payment Accrued |
| | $ - | 3/1/2016 | $ 1,748.80 | $ - | $ (1,748.80) | Payment Accrued |
| **Total:** | $ 1,748.80 | | $ 12,241.60 | $ - | $ (10,492.80) | |

| Delinquent Payments | | Days Delinquent: | 161 | |
|---|---|---|---|---|
| Month Due | P&I Due | Escrow Due | Stip Due | Total Due |
| 10/1/2015 | $ 1,308.75 | $ 440.05 | $ - | $ 1,748.80 |
| 11/1/2015 | $ 1,308.75 | $ 440.05 | $ - | $ 1,748.80 |
| 12/1/2015 | $ 1,308.75 | $ 440.05 | $ - | $ 1,748.80 |
| 1/1/2016 | $ 1,308.75 | $ 440.05 | $ - | $ 1,748.80 |
| 2/1/2016 | $ 1,308.75 | $ 440.05 | $ - | $ 1,748.80 |
| 3/1/2016 | $ 1,308.75 | $ 440.05 | $ - | $ 1,748.80 |
| Delinquency | | | $ | 10,492.80 |
| Less Suspense | | | $ | - |
| Total Delinquency | | | $ | 10,492.80 |

Represents Redacted Information

**Exhibit A**

SEE "PREPAYMENT NOTE ADDENDUM" ATTACHED HERETO AND MADE A PART HEREOF.
SEE "INTEREST-ONLY ADD. TO ARM NOTE" ATTACHED HERETO AND MADE A PART HEREOF.
SEE "ADDENDUM TO NOTE" ATTACHED HERETO AND MADE A PART HEREOF.

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| AUGUST 02, 2004 | MOON TOWNSHIP | PENNSYLVANIA |
|---|---|---|
| [Date] | [City] | [State] |

5000 FARADAY DRIVE, CHESTER, VA 23831
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 256,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is MORTGAGEIT, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.500 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on SEPTEMBER, 2004. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on AUGUST 01, 2034, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at GMAC MORTGAGE

PO BOX 780, WATERLOO, IA 50704-0780

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 1,618.09. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -
Single Family - Fannie Mae UNIFORM INSTRUMENT
Amended for Virginia

Initials

Form 3520 1/01

Represents Redacted Information

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

    (A) Change Dates

    The interest rate I will pay may change on the first day of      **AUGUST, 2008**     , and on that day every **6th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

    (B) The Index

    Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

    If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

    (C) Calculation of Changes

    Before each Change Date, the Note Holder will calculate my new interest rate by adding **FIVE AND ONE HALF**      percentage points (    **5.500**    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

    The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

    (D) Limits on Interest Rate Changes

    The interest rate I am required to pay at the first Change Date will not be greater than    **8.500**    % or less than    **6.500**    %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than    **ONE AND 000/1000THS**    percentage point(s) (    **1.000**    %) from the rate of interest I have been paying for the preceding    **6**    months. My interest rate will never be greater than    **13.500**    % , or less than **6.500** %.

    (E) Effective Date of Changes

    My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

    (F) Notice of Changes

    The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

    I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

    I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

    If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of            15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be       **5.000**         % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below). "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Initials:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
CEDRIC T. PAGE                          -Borrower

_____ (Seal)
ANGELA M. PAGE                          -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

[Sign Original Only]

This is to certify that this is the Note described in and secured by a Deed of Trust dated          AUGUST 02, 2004
on the Property located in          CHESTERFIELD          Virginia.

My Commission Expires: July 31, 20 07          _____
                                               Notary Public

Pay to the order of:

_____

Without Recourse
Mortgage IT, Inc.
By: _____
Name: _____
Title: Assistant Secretary

VMP-838N(VA) (0005)          Page 4 of 4          Form 3520 1/01

## ADDENDUM TO NOTE

This addendum is made     **AUGUST 02, 2004**     and is incorporated into and deemed to amend and supplement the Adjustable Rate Note of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
**5000 FARADAY DRIVE, CHESTER, VA 23831**

AMENDED PROVISIONS

In addition to the provisions and agreements made in the Note, I/we further covenant and agree as follows:

ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than   **8.500**   % or less than   **6.500**     %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than   **ONE AND 000/1000THS**   percentage point(s) ( **1.000** %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than   **13.500**    %. My interest rate will never be less than   **6.500**     %.

UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

In Witness Thereof, Trustor has executed this addendum.

_____
Witness

_____    8-2-04       _____    8/2/04
CEDRIC T. PAGE        (Date)       ANGELA M. PAGE        (Date)

_____        _____
(Date)                 (Date)

# PREPAYMENT NOTE ADDENDUM
## *(Virginia)*

This Prepayment Note Addendum is made this 2nd day of      AUGUST, 2004      and is incorporated into and shall be deemed to amend and supplement the Note of the same date (the "Note") made by the undersigned (the "Borrower") to evidence indebtedness to
MORTGAGEIT, INC.

(the "Lender"), which debt is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") of the same date and covering the property described in the Security Instrument and located at
5000 FARADAY DRIVE, CHESTER, VA 23831
(the "Property").

Additional Covenants. Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender covenant and agree that the provisions of the section of the Note entitled "BORROWER'S RIGHT TO PREPAY" are amended to read as follows:

Subject to the Prepayment charge provided below, I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." A "Full Prepayment" is the Prepayment of the entire unpaid Principal due under the Note. A payment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

If, within the   24   month period beginning with the date I execute the Note (the "Penalty Period"), I make a Full Prepayment, I will pay a Prepayment charge as consideration for the Note Holder's acceptance of such Prepayment. Unless otherwise prohibited by applicable law or regulation, the Prepayment charge will equal two percent (2%) of the amount of the Prepayment. No Prepayment charge will be assessed for any Prepayment occurring after the Penalty Period.

Notwithstanding the foregoing, in the event of a Full Prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first   0   months of the term of the Note, no Prepayment charge will be assessed. In that event, I agree to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

The Note Holder will apply all Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a Partial Prepayment, there will be no change in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If my Note is an Adjustable Rate Note, Partial Prepayments may reduce the amount of my monthly payment after the first Interest rate Change Date following the Partial Prepayment. However, any reduction due to my Partial Prepayment may be offset by an interest rate increase.

The Note Holder's failure to collect a Prepayment charge at the time a Prepayment is received shall not be deemed a waiver of such charge. Any Prepayment charge not collected at the time the Prepayment is received shall be payable on demand.

All other provisions of the Note are unchanged and remain in full force and effect.

NOTICE TO BORROWER

Do not sign this Addendum before you read it.  This Addendum provides for the payment of a prepayment charge if you wish to repay the loan prior to the date provided for repayment in the Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED:

_____(Seal)    _____(Seal)
CEDRIC T. PAGE               -Borrower     ANGELA M. PAGE         -Borrower

_____(Seal)    _____(Seal)
                       -Borrower                           -Borrower

_____(Seal)    _____(Seal)
                       -Borrower                           -Borrower

_____(Seal)    _____(Seal)
                       -Borrower                           -Borrower

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE PROMISSORY NOTE

PROPERTY ADDRESS:   5000 FARADAY DRIVE, CHESTER, VA 23831

THIS ADDENDUM is made this   2nd   day of AUGUST, 2004         , and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to
MORTGAGEIT, INC.

(the "Lender").

THIS ADDENDUM supersedes Section 3(A), 3(B), 4(C) AND 7(A) of the Note.  None of the other provisions of the Note are changed by this Addendum.

3.   PAYMENTS

(A)   Time and Place of Payments

I will pay interest by making payments every month for the first  120  payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues.  I will pay principal and interest by making payments every month thereafter for the next  240   payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

I will make my monthly payments on the  1st   day of each month beginning on SEPTEMBER, 2004        .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal.  If, on
AUGUST 01, 2034         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at
PO BOX 780, WATERLOO, IA 50704-0780
or at a different place if required by the Note Holder.

(B)   Amount of My Initial Monthly Payments

My initial monthly payments will be in the amount of U.S. $ 1,386.67        . This payment amount is based on the original principal balance of the Note.  This payment amount may change.

4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

   (C)    Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND ONE HALF         percentage point(s) ( **5.500** %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment will not be reduced due to voluntary prepayments.

7.    BORROWER'S FAILURE TO PAY AS REQUIRED

   (A)    Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00** % of my overdue payment of interest for the first **120** payments, **5.00** % of my overdue payment of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

_____ (Seal)
CEDRIC T. PAGE                  -Borrower

_____ (Seal)
ANGELA M. PAGE                  -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower



BOOK **6 1 6 9** PAGE **958**

UNIFIED SETTLEMENT SERVICES
Airport Office Park, Bldg. 2
400 Rouser Road, Suite 200
Moon Township, PA 15108

*Return to*

Prepared By: *LAtisha McCormick*
*MIT Lending*
*33 MAiDEN LANe*
*New York, NY 10038*

───────────── [Space Above This Line For Recording Data] ─────────────

# DEED OF TRUST

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by
CEDRIC T. PAGE AND ANGELA M. PAGE

Borrower (trustor), to                                                          , as

HENRY C. DAY, ESQ
32 WATERLOO STREET, SUITE 101, WARRENTON, VA 22186·

, and

, as

Trustee, for the benefit of Mortgage Electronic Registration Systems, Inc. as beneficiary.

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

Initials: *CP AP*

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3047  1/01
VMP-6A(VA) (0102)                       Page 1 of 15        LENDER SUPPORT SYSTEMS, INC. MERS6AVA.NEW (02/04)

## RECEIVED

AUG 12 2004

TIME: 10 07 (a.m.)p.m.
CHESTERFIELD CIRCUIT COURT

Represents Redacted Information

BOOK 6 1 6 9 PAGE 9 5 9

(A) "Security Instrument" means this document, which is dated           AUGUST 02, 2004
together with all Riders to this document.

(B) "Borrower" is
CEDRIC T. PAGE AND ANGELA M. PAGE

Borrower is the trustor under this Security Instrument.

(C) "Lender" is
MORTGAGEIT, INC.

Lender is a   CORPORATION
organized and existing under the laws of   NEW YORK
Lender's address is
33 MAIDEN LANE, 6TH FLOOR, NEW YORK, NY  10038-

(D) "Trustee" is
HENRY C. DAY, ESQ
Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered
corporation   whose   principal   office   is   located   in   Virginia.   Trustee's   address   is
32 WATERLOO STREET, SUITE 101, WARRENTON, VA 22186-
"Trustee" is

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered
corporation   whose   principal   office   is   located   in   Virginia.   Trustee's   address   is

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone of P.O. Box 2026, Flint, MI  48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated           AUGUST 02, 2004
The Note states that Borrower owes Lender
TWO HUNDRED FIFTY SIX THOUSAND AND NO/100 X X X X X X X X X X X X X X X X
                                                                                                                Dollars
(U.S. $  256,000.00         ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than     AUGUST 01, 2034            . The interest rate
stated in the Note is
                         SIX  AND ONE HALF                         percent (       6.500          %).
If this Security Instrument is an adjustable rate mortgage loan, this initial rate is subject to change in
accordance with the attached Adjustable Rate Rider.
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

Initials: _____

BOOK **6 1 6 9** PAGE  **960**

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "RIDERS" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [XX] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |

[XX] Other(s) [specify] PREPAYMENT RIDER
INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER
ADDENDUM TO ADJUSTABLE RATE RIDER

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Initials:

BOOK 6 1 6 9 PAGE **961**

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the              COUNTY              [Type of Recording Jurisdiction] of                     CHESTERFIELD                     [Name of Recording Jurisdiction]:

SEE COMPLETE LEGAL DESCRIPTION DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

which currently has the address of

|  | 5000 FARADAY DRIVE |  | [Street] |
|---|---|---|---|
| CHESTER | [City] , Virginia | 23831 | [Zip Code] |

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

VMP-6A(VA) (0102)                    Page 4 of 15                    Initials: _____
Form 3047  1/01

BOOK 6 1 6 9 PAGE  9 6 2

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such

Initials: _____

Form 3047  1/01

BOOK 6 1 6 9 PAGE   963

amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the

BOOK 6169 PAGE 964

payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or

VMP-6A(VA) (0102)                     Page 7 of 15                     Initials: _____

Form 3047 1/01

BOOK 6 1 6 9 PAGE  965

condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage

BOOK **6169** PAGE **966**

Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

VMP-6A(VA) (0102)                              Page 9 of 15

Initials: ___

Form 3047  1/01

BOOK 6169 PAGE 967

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the

Initials: _____

BOOK 6 1 6 9 PAGE 968

permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of

BOOK 6 1 6 9 PAGE  9 6 9

Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Initials: CDAP

Form 3047  1/01

BOOK 6169 PAGE 970

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

Initials: _CRP_

BOOK **6 1 6 9** PAGE **9 7 1**

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any RIDER executed by Borrower and recorded with it.

Witnesses:

_____
                                                        -Witness

_____
                                                        -Witness

_____ (Seal)
CEDRIC T. PAGE                      -Borrower

_____ (Seal)
ANGELA M. PAGE                      -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

VMP-6A(VA) (0102)                Page 14 of 15                Form 3047  1/01

BOOK 6 1 6 9 PAGE 972

STATE OF VIRGINIA                          Chesterfield        County ss:

The foregoing instrument was acknowledged before me this August 2, 2004        by
CEDRIC T. PAGE AND ANGELA M. PAGE

My Commission Expires: July 31, 2007

Notary Public

VMP-6A(VA) (0102)                Page 15 of 15                Initials: CPAP
                                                              Form 3047 1/01

BOOK 6 1 6 9 PAGE  9 7 3

# PREPAYMENT RIDER
## (Virginia)

This Prepayment Rider is made this  2nd  day of      AUGUST, 2004
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of
Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned
(the "Borrower") to secure Borrower's Note (the "Note") to

MORTGAGEIT, INC.

(the "Lender") of the same date and covering the property described in the Security Instrument
and located at

5000 FARADAY DRIVE, CHESTER, VA 23831

(the "Property").

Additional Covenants.  Notwithstanding anything to the contrary set forth in the Note
or Security Instrument, Borrower and Lender further covenant and agree as follows:

Borrower has the right to make payments of principal at any time before they are due.
A payment of principal only is known as a "prepayment." A "full prepayment" is the
prepayment of the entire unpaid principal due under the Note. A payment of only part of the
unpaid principal is known as a "partial prepayment."

If, within the  24  month period beginning with the date Borrower executes the
Note (the "Penalty Period"), Borrower makes a full prepayment, Borrower will pay a
prepayment charge as consideration for the Note Holder's acceptance of such prepayment.
The prepayment charge will equal two percent (2%) of the outstanding balance due on the
loan at the time of the prepayment, unless otherwise prohibited by applicable law or
regulation. No prepayment charge will be assessed for any prepayment occurring after the
Penalty Period.

Notwithstanding the foregoing, in the event of a full prepayment concurrent with a bona
fide sale of the Property to an unrelated third party after the first   o    months of the term of
the Note, no prepayment penalty will be assessed.  In that event, Borrower agrees to provide the
Note Holder with evidence acceptable to the Note Holder of such sale.

BOOK **6 1 6 9** PAGE **974**

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____(Seal)      _____(Seal)
CEDRIC T. PAGE              -Borrower      ANGELA M. PAGE             -Borrower

_____(Seal)      _____(Seal)
                           -Borrower                                -Borrower

_____(Seal)      _____(Seal)
                           -Borrower                                -Borrower

_____(Seal)      _____(Seal)
                           -Borrower                                -Borrower

Page 2 of 2

BOOK 6169 PAGE 975

# ADJUSTABLE RATE RIDER

(LIBOR Six Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

SEE "ADDENDUM TO ARM RIDER" ATTACHED HERETO AND MADE A PART HEREOF.
SEE "INTEREST-ONLY ADDENDUM TO ARM RIDER" ATTACHED HERETO AND MADE A PART HEREOF

THIS ADJUSTABLE RATE RIDER is made this     2nd     day of     AUGUST, 2004     ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to

MORTGAGEIT, INC.

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

5000 FARADAY DRIVE, CHESTER, VA 23831
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
     The Note provides for an initial interest rate of     6.500     %. The Note provides for
changes in the interest rate and the monthly payments, as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
     (A) Change Dates
     The interest rate I will pay may change on the first day of     AUGUST, 2006     ,
and on that day every     6th     month thereafter. Each date on which my interest rate could change
is called a "Change Date."

Initials: _____

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX MONTH INDEX (AS PUBLISHED IN *THE WALL STREET
JOURNAL*) -Single Family-Fannie Mae Uniform Instrument                         Form 3138 1/01
VMP-838R (0006)                    Page 1 of 4                LENDER SUPPORT SYSTEMS, INC. 838R.NEW (01/04)

BOOK 6169 PAGE 976

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND ONE HALF                         percentage points
(        5.500        %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 8.500        % or less than        6.500        %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than
ONE AND 000/1000THS                         percentage points
(        1.000        %) from the rate of interest I have been paying for the preceding        6        months. My interest rate will never be greater than   13.500   %, or less than 6.500 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

BOOK 6 1 6 9 PAGE 9 7 7

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials:

BOOK 6 1 6 9 PAGE  978

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
CEDRIC T. PAGE                              -Borrower

_____ (Seal)
ANGELA M. PAGE                             -Borrower

_____ (Seal)
                                                      -Borrower

_____ (Seal)
                                                      -Borrower

_____ (Seal)
                                                      -Borrower

_____ (Seal)
                                                      -Borrower

_____ (Seal)
                                                      -Borrower

_____ (Seal)
                                                      -Borrower

VMP-838R (0006)                    Page 4 of 4                    Form 3138 1/01

BOOK **6 1 6 9** PAGE **9 7 9**

### INTEREST-ONLY ADDENDUM
### TO ADJUSTABLE RATE RIDER

PROPERTY ADDRESS: 5000 FARADAY DRIVE, CHESTER, VA 23831

THIS ADDENDUM is made this    2nd    day of AUGUST, 2004          , and is incorporated into
and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this
Addendum executed by the undersigned and payable to
MORTGAGEIT, INC.

(the "Lender").

THIS ADDENDUM supersedes Section 4(C) of the Rider.  None of the other provisions of the Note are
changed by this Addendum.

4.     INTEREST RATE AND MONTHLY PAYMENT CHANGES

        (C)     Calculation of Changes
                Before each Change Date, the Note Holder will calculate my new interest rate by adding
FIVE  AND ONE HALF                      percentage point(s) ( 5.500   %) to the Current Index
for such Change Date.  The Note Holder will then round the result of this addition to the nearest
one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this
rounded amount will be my new interest rate until the next Change Date.

                During the Interest-Only Period, the Note Holder will then determine the amount of the
monthly payment that would be sufficient to repay accrued interest.  This will be the amount of my
monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I
make a voluntary prepayment of principal during such period.  If I make a voluntary prepayment of
principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to
the amount necessary to pay interest at the then current interest rate on the lower principal balance.  At the
end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the
amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am
expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly
payments over the remaining term of the Note.  The result of this calculation will be the new amount of
my monthly payment.  After the end of the Interest-Only Period, my payment will not be reduced due to
voluntary prepayments.

Initials *CP AP*

BOOK 6169 PAGE 980

_____ (Seal)
CEDRIC T. PAGE                -Borrower

_____ (Seal)
ANGELA M. PAGE                -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

Page 2 of 2

# PREPAYMENT PENALTY DISCLOSURE
## (Virginia)

*Loan Applicant(s):* CEDRIC T. PAGE AND ANGELA M. PAGE

*Property Address:* 5000 FARADAY DRIVE CHESTER, VA 23831

You are entering into a residential mortgage loan that will be secured by the property referenced above. The terms of your loan provide for the payment of a prepayment charge as described below.

If, within the 24 month period beginning with the date you execute the Note (the "Penalty Period"), you make a full prepayment, you will pay a prepayment charge as consideration for the Note Holder's acceptance of such prepayment. The prepayment charge will equal two percent (2%) of the amount of the prepayment, unless otherwise prohibited by applicable law or regulation. No prepayment penalty will be assessed for any prepayment made after the Penalty Period.

Notwithstanding the foregoing, in the event of a full prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first 0 months of the term of the Note, no prepayment penalty will be assessed. In that event, you must provide the Note Holder with evidence acceptable to the Note Holder of such sale. For purposes of this exception to the prepayment charge, a sale of the property to a person or entity with whom you have a personal or business relationship (such as a family member, builder, developer or employer) will be presumed NOT to be a bona fide sale of the Property to an unrelated third party.

ACKNOWLEDGMENT:  I/we hereby acknowledge receiving this disclosure.

_____ (Seal)
CEDRIC T. PAGE          -Borrower

_____ (Seal)
ANGELA M. PAGE          -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

603B3  Virginia Disclosure

LENDER SUPPORT SYSTEMS INC. AURDSCVA.AUR (03/03)

BOOK 6 1 6 9 PAGE 9 8 2

## ADDENDUM TO ADJUSTABLE RATE RIDER

This addendum is made   AUGUST 02, 2004   and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
5000 FARADAY DRIVE, CHESTER, VA 23831

AMENDED PROVISIONS

In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 8.500   % or less than   6.500   %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than   ONE AND 000/1000THS percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than   13.500   %. My interest rate will never be less than   6.500   %.

TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

Initials CD

BOOK **6 1 6 9** PAGE  **9 8 3**

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

In Witness Thereof, Trustor has executed this addendum.

Witness

_____ (Seal)     _____ (Seal)
CEDRIC T. PAGE                           -Borrower   ANGELA M. PAGE                           -Borrower

_____ (Seal)     _____ (Seal)
                                         -Borrower                                            -Borrower

1202 LIBOR Addendum to Rider                    Page 2 of 2

BOOK **6169** PAGE **984**

*Exhibit A*

ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND, WITH IMPROVEMENTS THEREON AND
APPURTENANCES THERETO BELONGING, LYING AND BEING IN CHESTERFIELD COUNTY, VIRGINIA BEING
KNOWN AND DESIGNATED AS LOT 36, SECTION FOUR, ON SUBDIVISION PLAT MADE BY TIMMONS,
ENGINEERS, SURVEYORS, LANDSCAPE ARCHITECT, ECT., SAID PLAT OF STONEY GLEN SOUTH, DATED
OCTOBER 24, 2003, RECORDED IN THE CLERK'S OFFICE, CIRCUIT COURT OF CHESTERFIELD COUNTY,
VIRGINIA, ON NOVEMBER 12, 2003 IN PLAT BOOK 139, PAGE 2 AND 3, REFERENCE TO WHICH PLAT IS
HEREBY MADE FOR A MORE PARTICULAR DESCRIPTION OF THE SAID PROPERTY HEREIN CONVEYED
HEREIN.

BEING A PART OF THE SAME PROPERTY CONVEYED TO THE REEDS LANDING CORPORATION, BY DEED FROM
THE THOMAS COMPANY, LLC, A VIRGINIA LIMITED LIABILITY COMPANY, DATED AUGUST 11, 2000,
RECORDED AUGUST 11, 2000, IN THE CLERK'S OFFICE, CIRCUIT COURT, CHESTERFIELD COUNTY,
VIRGINIA, IN DEED BOOK 3884 PAGE 336.

INSTRUMENT #3380
RECORDED IN THE CLERK'S OFFICE OF
CHESTERFIELD ON
JANUARY 12, 2005 AT 11:52AM
JUDY L. WORTHINGTON, CLERK

RECORDED BY: LCB



Processed

JUN 2 7 2014

HAMP Tier Two

After Signing Return To:
IndyMac Mortgage Services
Mailcode: IndyMac-5
2900 Esperanza Crossing
Austin, TX 78758

This document was prepared by _____

_____[Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"):[1] Cedric T Page and Angela M Page
Lender or Servicer ("Lender"): IndyMac Mortgage Services
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 8/2/2004

Property Address ("Property"): 5000 Faraday Drive, Chester, VA 23831

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

HOME AFFORDABLE MODIFICATION AGREEMENT - Non-GSE.

3/09 (rev. 10/10) (page 1 of 8 pages)

HAMP Tier Two

1. **My Representations**. I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned.

   C. There is no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

   G. I have made or will make all payments required under a Trial Period Plan.

2. **Acknowledgements and Preconditions to Modification**. I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification**. If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 5/1/2014 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on 5/1/2014.

   A. The new Maturity Date will be: 4/1/2035. The payments in the chart below are not sufficient to pay your debt in full. On the Maturity Date, based on the scheduled payments below, a Balloon Payment of $192,384.62 will remain and is due on the Maturity Date.

HAMP Tier Two

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $271,414.14 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means Interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of 5.00000% will begin to accrue on the New Principal Balance as of 4/1/2014 and the first new monthly payment on the New Principal Balance will be due on 5/1/2014. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 1-21 | 5.00000% | 4/1/2014 | $1,308.75 | $426.71, may adjust periodically | $1,735.46, may adjust periodically | 5/1/2014 | 252 |
| An estimated balloon payment of $192,384.62 is due on 4/1/2035 for your loan to be paid in full. | | | | | | | |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

HAMP Tier Two

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.  **Additional Agreements**. I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

HAMP Tier Two

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

HAMP Tier Two

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

HAMP Tier Two

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan.  Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.   That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.   That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L.   Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.  In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.  In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s);(d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

HAMP Tier Two

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P. THIS LOAN IS A BALLOON LOAN AND IS PAYABLE IN FULL AT MATURITY. THIS MEANS THAT YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE AT THE MATURITY DATE, AND LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE BE REQUIRED TO REPAY THE LOAN OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

In Witness Whereof, the Lender and I have executed this Agreement.

Lender

Pay to the order of:
Specialized Loan Servicing LLC

By: _____

Brian Murdock
Authorized Signatory

Date

Mortgage Electronic Registration
Systems, Inc. - Nominee for Lender

_____
Cedric T Page

5/8/14
Date

_____
Angela M Page

5/8/14
Date

_____ [Space Below This Line For Acknowledgement]_____

HOME AFFORDABLE MODIFICATION AGREEMENT - Non-GSE.

3/09 (rev. 10/10) (page 8 of 8 pages)

BK 10869 PG 0333

## Virginia Land Record Cover Sheet
## Cover Sheet Content - Form A

[ILS Cover Sheet Agent Online Version 2.3.1.27

016846

Date of Instrument     [ 05/05/2015        ]
Instrument Type        [ ASSIGN            ]
Number of Parcels      [ 1      ]
Number of Pages        [ 1      ]

Tax Exempt   Virginia/Federal Law

☐ Grantee [                         ]
☐ Grantor [                         ]

City ☐  County ☒  [ Chesterfield County        ]        (Box for Deed Stamp Only)

### First and Second Grantors

| | Last Name | First Name | Middle Name | Suffix |
|---|---|---|---|---|
| ☒ | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. | | | |
| ☒ | MORTGAGEIT, INC. | | | |

### First and Second Grantees

| | Last Name | First Name | Middle Name | Suffix |
|---|---|---|---|---|
| ☒ | DEUTSCHE BANK NATIONAL TRUST COMPANY | | | |
| ☐ | HOME EQUITY MORTGAGE LOAN | | | |

Grantee Address  (Name)          [ CEDRIC AND ANGELA PAGE          ]
                 (Address 1)     [ 5000 FARADAY DRIVE              ]
                 (Address 2)     [                                 ]
                 (City, State, Zip)  [ CHESTER          ] [ VA ] [ 23831  ]

Consideration [ 0.00      ]   Existing Debt  [ 0.00    ]   Assumption Balance  [ 0.00        ]

Prior Instr. Recorded at: City ☐  County ☒  [ Chesterfield County    ]   Percent. in this Juris.(%)[ 100  ]
Book [        ] Page [        ] Instr. No [                  ]
Parcel Identification No (PIN)  ███████████

Short Property Description          [ N/A

Current Property Addr(Address 1)    [ 5000 FARADAY DRIVE
                 (Address 2)        [
                 (City, State, Zip) [ CHESTER               ] [ VA  ] [ 23831  ]

Instrument Prepared by       [ M. E. WILEMAN
Recording Paid for by        [ ORION FINANCIAL GROUP, INC.
Return Recording to (Name)   [ M. E. WILEMAN
                 (Address 1) [ ORION FINANCIAL GROUP, INC.
                 (Address 2) [ 2860 EXCHANGE BLVD., SUITE 100
                 (City, State, Zip) [ SOUTHLAKE        ] [ TX ] [ 76092  ]
Customer Case ID             [              ] [         ] [ ████████ ]

Cover Sheet Page # 1 of 2

███ Represents Redacted Information

Instrument Control Number

# Virginia Land Record Cover Sheet
## Cover Sheet Content - Form B

[ILS Cover Sheet Agent Online Version 2.3.1.27

| | |
|---|---|
| Date of Instrument | [ 05/05/2015     ] |
| Instrument Type | [ ASSIGN        ] |
| Number of Parcels | [ 1        ] |
| Number of Pages | [ 1        ] |

Tax Exempt   Virginia/Federal Law

☐ Grantee [                    ]

☐ Grantor [                    ]

City ☐   County ☒   [ Chesterfield County          ]          (Box for Deed Stamp Only)

Grantors/Grantees/Parcels Continuation Form B

| | Last Name | First Name | Middle Name | Suffix |
|---|---|---|---|---|
| ☒☐☐ | [ DAY | [ HENRY | [ C | ] [ TR |
| ☒☐☐ | [ PAGE | [ CEDRIC | [ T | |
| ☒☐☐ | [ PAGE | [ ANGELA | [ M | |

Prior Instr. Recorded at: City ☐   County ☒   [                    Percent. in this Juris.(%) [          ]

Book [        ] Page [        ] Instr. No [                    ]

Parcel Identification No (PIN)

Tax Map Num. (if different than PIN)

Short Property Description

Current Property Addr(Address 1)

(Address 2)

(City, State, Zip)                              ] [      ] [

Cover Sheet Page # 2 of 2

PREPARED BY & RETURN TO:
M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092

**Notice of Assignment**          Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
("MERS") AS NOMINEE FOR MORTGAGEIT, INC., ITS SUCCESSORS AND ASSIGNS P.O. Box 2026, Flint, MI
48501-2026 (Assignor)** by these presents does assign, and set over, without recourse, to **DEUTSCHE BANK NATIONAL
TRUST COMPANY, AS TRUSTEE FOR HOME EQUITY MORTGAGE LOAN ASSET-BACKED TRUST, SERIES
INABS 2005-A, HOME EQUITY MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES INABS 2005-A
C/O SPECIALIZED LOAN SERVICING LLC, 8742 LUCENT BLVD #300, HIGHLANDS RANCH, CO 80129**
(Assignee) the described mortgage/deed of trust with all interest, all liens, any rights due or to become due thereon, executed by
**CEDRIC T. PAGE AND ANGELA M. PAGE** to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS')
AS NOMINEE FOR MORTGAGEIT, INC. ITS SUCCESSORS AND ASSIGNS and HENRY C. DAY, ESQ, as trustee.    Said
mortgage/deed of trust **Dated: 8/2/2004** is recorded in the **State of VA, County of Chesterfield on 1/12/2005, as Book 6169
Page 957 AMOUNT: $ 256,000.00**     Property Address: 5000 FARADAY DRIVE, CHESTER, VA 23831
IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed by its proper officer.
Executed on: April 29, 2015
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR MORTGAGEIT, INC.. ITS
SUCCESSORS AND ASSIGNS

By: _____          _____

Robin Mathews, Assistant Secretary          Witness:  T. Davis

State of Texas County of Tarrant
On 04/29/2015, before me, the undersigned, personally appeared Robin Mathews, who acknowledged that he/she is Assistant
Secretary of/for   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR
MORTGAGEIT. INC.. ITS SUCCESSORS AND ASSIGNS and that he/she executed the foregoing instrument and that such
execution was done as the free act and deed of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS
NOMINEE FOR MORTGAGEIT, INC., ITS SUCCESSORS AND ASSIGNS.



C. LAFFERTY
MY COMMISSION EXPIRES
November 30, 2018

_____

Notary public, C. Lafferty
My commission expires: November 30, 2018

INSTRUMENT #BATCH
RECORDED IN THE CLERK'S OFFICE OF
CHESTERFIELD ON
MAY 21; 2015 AT 08:57AM

WENDY S. HUGHES, CLERK
RECORDED BY: ETW

MERS Phone 888-679-6377
VA Chesterfield                    SLS/ASM/INABS#242

**Exhibit C**

## Case Number 1531584

### Debtor Information

NATIONAL**DATA**CENTER

| Debtor 1 | Cedric Tyrell Page, Sr. |
| Debtor 2 | Angela Moore Page |

**Status**

Trustee Data current as Of   03/09/2016
Total of 6 marked Claim(s)   $140,245.78
Outstanding amount in marked
claims   $139,336.24

### Trustee Information

| Trustee | Carl M. Bates |

### CASE INFORMATION

| | | | |
|---|---|---|---|
| Case Number | 1531584 | Filing Fee in Plan | |
| Case Status | CONFIRMED AND OPERATING | Filing Fee Paid to Date | |
| Customer Code | ███████ | Date Petition Filed | 03/25/2015 |
| Balance on Hand | $37.25 | Date Plan Filed | 09/15/2015 |
| Last Receipt Date | 02/09/2016 | First 341 Meeting Date | 09/03/2015 |
| Last Receipt Amount | $750.00 | | |
| Last Disbursement Date | 02/24/2016 | Date Case Confirmed | 10/30/2015 |
| Percentage to Unsecured | 12.73% | Date Case Closed | |
| Plan Base | $118,800.00 | Bar Date | |
| Total Paid into Plan | $3,750.00 | Cleared Date | |
| Total Paid to all Parties | $3,712.75 | Date First Payment Due | 09/05/2015 |
| Total Paid to Creditors | | | |
| Delinquency Amount | | Confirmation Hearing Date | 10/28/2015 |
| Min To Unsecured | | Final Report Date | |
| Court Case Number | 15-31584-KRH | Show Cause Date | |
| Unsecured Interest | 0.0000 | Probation Date | |
| Proposed Length Of Plan | 60 | Bar Check Flag | True |
| | | Disburse Flag | True |

Additional Parties In Interest

**TRUSTEE INFORMATION**

| | |
|---|---|
| Trustee Name | Carl M. Bates |
| Trustee City | Richmond, VA |
| Amount Paid to Date | $193.50 |

**PLAN STEP INFO**

| | |
|---|---|
| Hold Permanent | 0 |
| Hold Temporary | 0 |

#### JUDGE/ATTORNEY INFORMATION

| | |
|---|---|
| Judge Name | KEVIN R. HUENNEKENS |
| Court District | Eastern District of Virginia |
| Court Division Region | Richmond |
| Attorney Name | Richard O. Gates, Esquire |
| Attorney Address | P.O. Box 187 |
| | Chesterfield, VA 238320000 |
| Attorney Phone | 8047480382 |
| Attorney Percent | 0.0000 |

███████ Represents Redacted Information

| | |
|---|---|
| Attorney Pay Level For Percent | 0.0000 |
| Attorney Fee in Plan | |
| Attorney Paid to Date | |
| Attorney Fee Paid Outside Plan | |

### DEBTOR INFORMATION

| Debtor 1 | | Debtor 2 | |
|---|---|---|---|
| Debtor Name | Cedric Tyrell Page, Sr. | Debtor Name | Angela Moore Page |
| Direct Payment Amt | | Direct Payment Amt | |
| Direct Payment Frequency | | Direct Payment Frequency | |
| Payroll Deduction Amt | $750.00 | Payroll Deduction Amt | |
| Payroll Deduction Frequency | MONTHLY | Payroll Deduction Frequency | |

| START DATE | DEBTOR NAME | PAYMENT AMOUNT | PAYMENT FREQUENCY | NUMBER OF PAY PERIODS | PAYING_TYPE | PAYEE TYPE |
|---|---|---|---|---|---|---|
| 09/05/2015 | Cedric Tyrell Page, Sr. | $750.00 | MONTHLY | 12 | | Employer |
| 09/05/2016 | Cedric Tyrell Page, Sr. | $1,650.00 | MONTHLY | 12 | | Employer |
| 09/05/2017 | Cedric Tyrell Page, Sr. | $2,500.00 | MONTHLY | 999 | | Employer |

### CUSTOMER CASE TAG

Case Identifier:

Comment:

## Claim Summary

NATIONAL**DATA**CENTER

| | |
|---|---|
| Case Number: 1531584 | Debtor1 Name: Cedric Tyrell Page, Sr. |
| Case Status: Confirmed And Operating | Debtor2 Name: Angela Moore Page |

Trustee Name: Carl Bates
Trustee City: Richmond, VA

| CLAIM NUMB | CREDITOR NAME | CLAIM DESCRIPTION | CLAIM AMOUNT | PRINCIPA PAID | INTERES PAID | SCHEDU AMOUNT | PRINCIPA OWED | MONTHL PAYMEI | INTERES RATE % |
|---|---|---|---|---|---|---|---|---|---|
| 5008 | Internal Revenue Service | SECURED | $20,806.20 | $1,988.33 | $200.63 | $0.00 | $18,817.87 | $547.24 | 3.0000% |
| 8 | Internal Revenue Service | PRIORITY - REFORM ACT | $32,522.00 | $767.68 | $0.00 | $0.00 | $31,754.32 | $2,168.14 | 0.0000% |
| 11 | Specialized Loan Servicing LLC | SECURED ARREARAGE- REFORM ACT | $26,234.02 | $214.77 | $0.00 | $0.00 | $26,019.25 | $655.88 | 0.0000% |
| 5005 | Treasurer Chesterfield County | SECURED | $780.99 | $149.40 | $0.00 | $0.00 | $631.59 | $39.05 | 0.0000% |
| 10 | CHADWICK,WASHINGTON,| | SECURED | $1,459.98 | $146.00 | $0.00 | $0.00 | $1,313.98 | $36.50 | 0.0000% |
| 7 | Mercedes-Benz Financial Services | VEHICLE ARREARS | $4,072.55 | $27.21 | $0.00 | $0.00 | $4,045.34 | $90.51 | 0.0000% |
| 15 | Rushmore Loan Management | SECURED ARREARAGE- REFORM ACT | $17,654.85 | $25.23 | $0.00 | $0.00 | $17,629.62 | $441.38 | 0.0000% |
| 0 | | DEBTOR REFUND | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.0000% |
| 0 | Richard O. Gates, Esquire | ATTORNEY FEE | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.0000% |
| 1 | Ballato Law Firm | UNSECURED | $353.88 | $0.00 | $0.00 | $0.00 | $45.03 | $0.00 | 0.0000% |
| 10010 | CHADWICK,WASHINGTON,| | UNSECURED | $161.00 | $0.00 | $0.00 | $0.00 | $20.49 | $0.00 | 0.0000% |
| 12 | American Infosource LP | UNSECURED | $670.27 | $0.00 | $0.00 | $0.00 | $85.29 | $0.00 | 0.0000% |
| 13 | American Infosource LP | UNSECURED | $59.69 | $0.00 | $0.00 | $0.00 | $7.60 | $0.00 | 0.0000% |
| 14 | American Infosource LP | UNSECURED | $415.67 | $0.00 | $0.00 | $0.00 | $52.89 | $0.00 | 0.0000% |
| 16 | M&T Bank | REJECTED | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.0000% |
| 17 | CAN CAPITAL ASSET SERVICING | UNSECURED | $34,068.06 | $0.00 | $0.00 | $0.00 | $4,335.16 | $0.00 | 0.0000% |
| 2 | Bon Secours St. Francis Medical Cen | UNSECURED | $170.69 | $0.00 | $0.00 | $0.00 | $21.72 | $0.00 | 0.0000% |
| 3 | Ashley Funding Services LLC | UNSECURED | $32.60 | $0.00 | $0.00 | $0.00 | $4.15 | $0.00 | 0.0000% |
| 4 | EDWARD S. WHITLOCK, III, ESQ | UNSECURED | $9,119.70 | $0.00 | $0.00 | $0.00 | $1,160.48 | $0.00 | 0.0000% |
| 5 | Treasurer Chesterfield County | PRIORITY - REFORM ACT | $633.23 | $0.00 | $0.00 | $0.00 | $633.23 | $42.22 | 0.0000% |
| 6 | ALLSCRIPTS HEALTHCARE LLC | UNSECURED | $6,720.39 | $0.00 | $0.00 | $0.00 | $855.17 | $0.00 | 0.0000% |
| 6005 | Treasurer Chesterfield County | UNSECURED | $296.05 | $0.00 | $0.00 | $0.00 | $37.67 | $0.00 | 0.0000% |
| 6008 | Internal Revenue Service | UNSECURED | $4,966.04 | $0.00 | $0.00 | $0.00 | $631.93 | $0.00 | 0.0000% |
| 9 | PROFESSIONAL CREDIT SOLUTIONS | UNSECURED | $485.07 | $0.00 | $0.00 | $0.00 | $61.73 | $0.00 | 0.0000% |

## Claim Detail

NATIONAL**DATA**CENTER

Case Number: 1531584      Debtor1 Name: Cedric Tyrell Page, Sr.      Trustee Name: Carl Bates
Case Status: Confirmed And Operating      Debtor2 Name: Angela Moore Page      Trustee City: Richmond, VA

### CLAIM DETAIL

| | |
|---|---|
| Claim Number | 11 |
| Claim Description | SECURED ARREARAGE-REFORM ACT |
| Claim Type Code | 8 |
| Class Type Description | SECURED |
| Class Type Code | S |
| Level | 77 |
| Comment | |
| Account Number | ■ |
| Reference Number | ■ |
| UCI | |
| Claim Start Payment Date | |
| Court Claim Number | 11 |
| Percent Paid | 0.8200 |
| Mortgage Due Date | |
| Final Report Category | Mortgage Arrears |
| Claim Status Description | |

### CLAIM AMOUNTS

| | |
|---|---|
| Claim Amount | $26,234.02 |
| Scheduled Amount | $0.00 |
| Monthly Payment | $655.88 |
| Collateral Value Amount | $293,011.12 |
| Principal Paid | $214.77 |
| Principal Owed | $26,019.25 |
| Principal Due Amount | $2,408.75 |
| Interest Rate % | 0.0000 |
| Interest Paid | $0.00 |
| Interest Due Amount | $0.00 |
| Trustee Percent | 0.0000 |

### CREDITOR INFORMATION

| | |
|---|---|
| Creditor Name | Specialized Loan Servicing LLC |
| Mailing Address | PO Box 636007 |
| | Littleton, CO 80163 |
| Contact Name | |
| Phone Number | |
| Creditor Number | 68022 |

### FLAGS

No Check Indicator
Stop Disburse Indicator
Continuing Indicator
Reserve Indicator

## Payment History

### CUSTOMER CLAIM TAG

**Payment Type**      Claim Identifier:   ■

Comment:

| DATE | CHECK NUMBER | NAME OF PARTY | DESCRIPTION | PAYMENT AMOUNT | TOTAL |
|---|---|---|---|---|---|
| 01/13/2016 | ■ | Specialized Loan Servicing LLC | PRINCIPAL (SYSTEM CHECK) | $35.64 | $214.77 |
| 11/18/2015 | ■ | Specialized Loan Servicing LLC | PRINCIPAL (SYSTEM CHECK) | $179.13 | $179.13 |

Case 15-31584-KRH    Doc 50    Filed 04/04/16    Entered 04/04/16 17:07:33    Desc Main
Document     Page 61 of 61

| DATE | CHECK NUMBER | NAME OF PARTY | DESCRIPTION | PAYMENT AMOUNT | TOTAL |
|------|--------------|---------------|-------------|----------------|-------|